IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| TOMMIE LEE HATTON, #1485811 | § | |
| VS. | § | CIVIL ACTION NO. 6:09cv71 |
| HENDERSON COUNTY JAIL, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Tommie Lee Hatton, a Texas prison inmate previously confined in the Henderson County Jail, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983 against the Henderson County Jail and Templeton Construction Company ("Templeton"). The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

The present opinion concerns the various dispositive motions filed by the parties. Henderson County has filed a motion to dismiss (docket entry #14) and a motion for summary judgment (docket entry #35). Templeton likewise filed a motion to dismiss (docket entry #34) and a motion for summary judgment (docket entry #33). The Plaintiff, in turn, filed a motion for summary judgment (docket entry #38), along with a response to the Defendants' arguments (docket entry #36). Templeton filed a reply (docket entry #42).

Facts of the Case

The original complaint was filed on February 19, 2009. The Plaintiff complained about the injuries he received using a jackhammer while confined at the Henderson County Jail and the medical care he received for his injuries. On June 25, 2009, the Court conducted an evidentiary hearing, in

1

accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Defendants were in attendance at the hearing. The Plaintiff testified as to the factual basis of his claims. The Defendants submitted documentary evidence consisting of the Henderson County Jail records concerning the Plaintiff.

The Plaintiff was confined in the Henderson County Jail in October, 2007. He bonded out on November 23, 2007. In January, 2008, he pled guilty to a eight year sentence and was sent to the Texas prison system. While he was confined in the jail, he was assigned as a trusty to work with a demolition crew under the supervision of Templeton. The Plaintiff testified that he had worked extensively in construction before he was incarcerated, which included work using a jackhammer. He was injured on November 10, 2007, while using a jackhammer as a trusty. He was working under the supervision of Mr. Mike, a Templeton employee. Just after lunch on November 10, 2007, the Plaintiff was using a jackhammer when the pin came out. Mr. Mike told him to place the pin back where it belonged. The Plaintiff complied with the instruction, but the pin came back out and the bit struck him in the chest. The Plaintiff testified that he could not breathe immediately after being struck.

A jailer called for an ambulance. A nurse from the jail examined the Plaintiff. There was swelling around his collar bone. They thought that the Plaintiff may have sustained a broken collar bone or a broken rib. He was transported to the hospital. X-rays revealed that the swelling was too bad to determine if anything was broken. A doctor stated that he needed a MRI, but the Plaintiff was taken back to the jail without receiving a MRI. He never received one. Instead, he was given Tylenol and instructed to go back to work. The Plaintiff testified that the jail nurse told him that he would not receive a MRI even though he was spitting up blood. The Plaintiff admitted that he never went to a doctor during the period of time that he was out of jail on bond. TDCJ medical personnel also failed

to provide him with any medical care for his injuries. The Plaintiff testified that his lawsuit is primarily concerned with the way he was treated after he was injured. He believes that he should have received additional medical care.

When questioned by the attorney for the Henderson County Jail, the Plaintiff acknowledged that he had indicated on the complaint form that he had not exhausted his administrative remedies. He acknowledged that he had used jackhammers in the past. He testified that Mr. Mike supervised the construction work on behalf of Templeton, while Deputy Smith watched the inmates on behalf of the jail. Deputy Smith called for an ambulance as soon as the accident occurred. The Plaintiff again testified that his lawsuit primarily concerns the lack of medical care provided for his injuries. He acknowledged that he was sent to the hospital. On the other hand, after returning to the jail, he did not receive a MRI nor any medication.

The Plaintiff's medical records were discussed. One entry by Dr. Lemmon (HCSO 0041) on November 6, 2007, noted a sore left chest wall area. The chest was clear to auscultation. The Plaintiff's cardiac rhythm was regular without any murmurs, gallops or robs. Dr. Lemmon stated that the Plaintiff was doing as well as he would have expected. His plan was for the Plaintiff was to continue full activity and to notify medical personnel for any persistent problems. The Plaintiff testified that he never saw Dr. Lemmon again after the examination on November 6, 2007.

When questioned by the attorney for Templeton, the Plaintiff testified that Mr. Mike did not prevent him from receiving medical care. The Plaintiff testified that his claim again Templeton was that he was provided a defective tool to work with. He acknowledged that he was not forced to work for Templeton. He volunteered to work for them. He reported to Lt. Felts, who assigned him to work for Mr. Mike. He worked for Templeton for three weeks before the occurrence of the accident. The

3

Plaintiff testified that he had used similar jackhammers while working in the free world. He testified that he knew how to use jackhammers and that this one was defective. He noted that just placing the pin back in the jackhammer was not the proper method of handling the problem. The compressor should have been turned off before the pin was placed back in the jackhammer. The Plaintiff acknowledged that Templeton had nothing to do with the medical care provided by the jail.

<u>Henderson County Jail's Dispositive Motions</u>

The Henderson County Jail filed a motion to dismiss (docket entry #14) on April 20, 2009. The Henderson County Jail argued that the jail is not a separate legal entity that can be sued. Tex. Loc. Govt. Code Ann. § 351.001. It has no jural existence, and it is not subject to suit. *Lewis v. Houston County Jail*, 876 F.Supp. 861 (E.D. Tex. 1995); *Wright v. El Paso County Jail*, 642 F.2d 134, 136 n.3 (5th Cir. 1981).

The Henderson County Jail also filed a motion for summary judgment (docket entry #35) on July 27, 2009. It was again argued that the Henderson County Jail has no jural existence and is not subject to suit. It was additionally argued that the lawsuit should be dismissed because the Plaintiff did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(e). It was finally argued that the facts of this case at most give rise to a claim of negligence, and that the Plaintiff had failed to state the required elements of a cause of action for negligence.

<u>Templeton's Dispositive Motions</u>

Templeton filed a motion to dismiss the claims against it pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (docket entry #34). It was noted that Templeton was hired by Henderson County to perform a construction project. Templeton argued that the Plaintiff has not alleged any federal claims against it. Templeton asserted that the lawsuit may best be described as a state personal injury claim, as opposed to a civil rights claim.

4

Templeton filed a motion for summary judgment (docket entry #33) on July 27, 2009. Templeton argued that it, as a private company, cannot be sued in a § 1983 lawsuit. It was further argued that its actions cannot be construed as a governmental function in behalf of the State. *See Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003); *Lemoine v. New Horizons Ranch and Center, Inc.*, 990 F.Supp. 498 (N.D. Tex. 1998). It was asserted that the construction of government buildings does not entail performing a government function. *See White v. Cooper*, 55 F.Supp.2d 848, 859-60 (N.D. Ill. 1999). Templeton argued that it is entitled to summary judgment with respect to any claim brought by the Plaintiff pursuant to 42 U.S.C. § 1983.

### Plaintiff's Response and Motion for Summary Judgment

The Plaintiff filed a response (docket entry #37) on July 30, 2009. He argued that the case should not be dismissed. He complained that he was injured and did not receive care. He asserted that the two Defendants were trying to place the blame on the other. He noted that the records indicate that he saw Dr. Lemmon only on November 6, 2007. Dr. Lemmon came to the jail only once every other week, and he complained that Dr. Lemmon did not speak to the nurses about providing him with medication. He complained that Templeton was disavowing any responsibility for his injuries. He stressed that he was injured using a Templeton's jackhammer. He worked for the company free of charge, and he complained that the Defendants did not want to accept responsibility for his injuries.

The Plaintiff filed a motion for summary judgment (docket entry #38) on August 4, 2009. He argued that the case should not be dismissed. He stated that he filed the lawsuit on a § 1983 form because that was the only form available. He asserted that he never pursued his grievance remedies at the prison system because the injury did not occur while he was in prison. He argued that he had shown proximate cause for his injuries.

Templeton's Response

Templeton filed a response to the Plaintiff's motion for summary judgment (docket entry #42). It was argued that the motion was more akin to a response to a motion for summary judgment than a Rule 56 motion for summary judgment. Templeton noted that the Plaintiff asserted that he did not file the lawsuit based on a civil rights violation; instead, he filed it because the Defendants did not take care of him. Templeton thus argued that it is entitled to summary judgment with respect to any and all claims filed pursuant to 42 U.S.C. § 1983.

Discussion and Analysis

The first issue for consideration is Henderson County Jail's motion to dismiss. The capacity of an entity to be sued is "determined by the law of the state in which the district court is held." Fed. R. Civ. P. 17(b). Under Texas law, the key issue is whether the entity has been granted the capacity "to sue or be sued." *Dillon v. Jefferson County Sheriff's Dept.*, 973 F.Supp. 626, 627 (E.D. Tex. 1997). A county department must have a separate legal existence to be sued. *See Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313 (5th Cir. 1991). A county jail does not have a separate jural existence in order to be sued. *Lewis v. Houston County Jail*, 876 F.Supp. at 865 n.1; *Lane v. Athens Police Dept.*, Civil Action No. 6:05cv498, 2006 WL 1049966 at *3 (E.D. Tex. March 24, 2006) (finding that the Henderson County Jail is not a separate legal entity and cannot be sued in its own name). The Henderson County Jail's motion to dismiss should be granted.

The next issue for consideration is the Henderson County Jail's motion for summary judgment. In addition to the argument that it does not have a separate jural existence in order to be sued, the Henderson County Jail argued that it is entitled to summary judgment because the Plaintiff did not exhaust his administrative remedies.

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence

7

sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

The federal law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Later, the Supreme Court reiterated that exhaustion is mandatory and it would not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The Supreme Court's most recent pronouncement on exhaustion was in *Jones v. Bock*, 549 U.S. 199 (2007). The Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Fifth Circuit has determined, however, that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the

prisoner's failure to exhaust appeared on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Torns v. Mississippi Dept. of Corrections*, 301 Fed. Appx. 386, 389 (5th Cir. 2008). The exhaustion requirement applies to county jail inmates bringing civil rights lawsuits about matters that occurred in the jail. *See, e.g., Teixeira v. Gregg County Jail*, 74 Fed. Appx. 388 (5th Cir. 2003).

The Plaintiff acknowledged in the original complaint that he did not exhaust his administrative remedies. The admission was brought out by the Henderson County Jail during the *Spears* hearing. The Henderson County Jail properly raised the issue in the motion for summary judgment. The Plaintiff correctly pointed out that the reference in the motion to exhausting his administrative remedies in the Texas prison system was erroneous; nonetheless, despite the *faux pas*, the Henderson County Jail was correct in arguing that the case should be dismissed for failure to exhaust administrative remedies. The Plaintiff did not exhaust the administrative remedies available to him at the Henderson County Jail, thus the motion for summary judgment granted on this issue.

The Henderson County Jail also argued that it is entitled to summary judgment because the Plaintiff failed to state the required elements for a cause of action for negligence. The observation was appropriate, but it also raises a more fundamental concern. The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). Negligence does not provide a basis for relief in a federal civil rights lawsuit. *See Daniels v. Williams*, 474 U.S. 327 (1986); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). In the context of safety and medical claims, the Supreme Court emphasized that a claim of negligence does not suffice and that a prisoner must show that the defendants were deliberately indifferent. *Farmer v. Brennan*,

9

511 U.S. 825, 835 (1994). The Henderson County Jail is entitled to summary judgment to the extent that the Plaintiff's substantive claim concerns negligence.

The next issue for consideration is Templeton's motion to dismiss pursuant to Rule 12(b)(1). Templeton correctly noted that federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws and treaties of the United States. 28 U.S.C. § 1331. A complaint should not be dismissed pursuant to Rule 12(b)(1) unless a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Templeton argued that the Plaintiff has not alleged facts showing that it can be held liable under 42 U.S.C. § 1983. This argument was developed more fully in Templeton's motion for summary judgment. Templeton additionally argued that the Plaintiff cannot show a basis for diversity jurisdiction because both the Plaintiff and Templeton are citizens of Texas. 28 U.S.C. § 1332. Templeton appropriately argued that the Plaintiff is actually trying to bring a personal injury claim against it, which is a state tort claim.

In the motion for summary judgment, Templeton correctly brought out that it is not a proper defendant in a civil rights lawsuit. It is again noted that the Plaintiff filed the lawsuit pursuant to 42 U.S.C. § 1983, which states that every "person" who acts under color of state law to deprive another of constitutional rights shall be liable to the injured party. To state a claim under § 1983, the Plaintiff must alleged facts tending to show (1) that he has been "deprived of a right 'secured by the Constitution and the laws' of the United States," and (2) that the deprivation was caused by a person or persons acting "under color of" state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Section 1983 suits may, for example, be used to sue a state employee using or abusing power that is possessed by virtue of state law to violate a person's constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 184 (1961); *accord, Brown v. Miller*, 631 F.2d 408, 410-11 (5th Cir. 1980). A private

company ordinarily will not be a state actor for purposes of § 1983 litigation, although a private company may be a state actor if it was "performing a government function traditionally reserved to the state." *Rosborough*, 350 F.3d at 461 (a private prison management company and its employees may be liable in a civil rights lawsuit). In the present case, Templeton was not a state actor. It was not performing a government function traditionally reserved to the state. It simply was performing a construction job after being hired by Henderson County. The fact that it was performing a construction job for a state actor did not make it a state actor. Templeton's motion for summary judgment should be granted, which necessarily means the motion to dismiss should likewise be granted.

Finally, the Plaintiff's response and motion for summary judgment did not show that he had a basis for proceeding in this case. As noted by the Defendants, the facts of this case may provide a basis for a personal injury case in state court. He may also have a deliberate indifference claim against people who were not defendants in this case, but both the Henderson County Jail and Templeton Construction Company are entitled to have the claims against them dismissed. It is accordingly

**ORDERED** that the Henderson County Jail's motion to dismiss (docket entry #14) and motion for summary judgment (docket entry #35) are **GRANTED**. It is further

**ORDERED** that the Templeton Construction Company's motion to dismiss (docket entry #34) and motion for summary judgment (docket entry #33) are **GRANTED**. It is further

**ORDERED** that the Plaintiff's civil rights claims against the Henderson County Jail and the Templeton Construction Company are **DISMISSED** with prejudice.

The dismissal of the Plaintiff's federal civil rights claims against the Henderson County Jail and the Templeton Construction Company does not preclude the Plaintiff from filing appropriate lawsuits in state or federal courts arising out of the facts of this case. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **24** day of **August, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE